UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALPHONSE EDOUARD, <br><br> *Plaintiff*, <br><br> v. <br><br> CITY OF LONG BRANCH and JOHN BUTOW, <br><br> *Defendants*. | Civil Action No.: <br> 3:17-cv-03582 PGS-TJB <br><br> **MEMORANDUM AND ORDER** |

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 74). Alphonse Edouard ("Plaintiff"), a Haitian American and member of the Roman Catholic Church, filed this action against the City of Long Branch (the "City") and John Butow ("Butow), the City's tax assessor, alleging Defendants discriminated against him based on his race, ethnicity and religion by assessing his property at an excessive and artificially higher value than his Caucasian, non-Roman Catholic neighbors. Plaintiff also alleges he was denied the opportunity to obtain information from City officials concerning his increased property assessment based on his ethnicity, race and religion.

Previously, on December 4, 2018, the Court granted Defendant's motion to dismiss Plaintiff's claims under 42 U.S.C. § 1983 (Counts I, II, III) and the Open Public Records Act, N.J.S.A. § 47:1A-1 to -13 (Count V). (ECF No. 54). The sole

1

claim remaining is Count IV, 42 U.S.C. § 3605, discrimination in residential real estate-related transactions, of the Fair Housing Act ("FHA"). Oral argument was held on September 14, 2022. For the reasons that follow, Defendants' motion for summary judgment is granted.

## I.

The following undisputed facts are summarized based on the record. Plaintiff is the owner of condominium located at 54 Waterview Way, Long Branch, NJ 07440. (Defendants' Statement of Facts, ECF No. 74-1 ("DSF") ¶ 6, Ex. C; Plaintiff's Statement of Facts ("PSF") ¶ 6). Plaintiff's condominium is part the Villas at Harbor Island complex. (DSF ¶ 31; PSF ¶ 31).

By letter dated October 13, 2015, Plaintiff received notice from Realty Appraisal Company ("Realty Appraisal"), a firm retained by the City to perform property assessments, informing him that the appraised value of his condominium was $660,300. (DSF ¶ 30, Ex. E; PSF ¶ 30). The letter explained that the assessment reflected the present market value and provided the opportunity to discuss the appraisal with a representative of Realty Appraisal by making an appointment online or by phone. (DSF ¶¶ 13, 30, Ex. E; PSF ¶¶ 13, 30).

Plaintiff did not arrange an appointment with Realty Appraisal as set forth in the October 13, 2015 letter. (DSF ¶¶ 33-34, Ex. C 62:25-63:6). He did not allow anyone from Realty Appraisal or the tax assessor's office into his home to perform

an inspection for purposes of the assessment. (DSF ¶ 35; PSF ¶35). Rather, Plaintiff alleges he attempted to contact Mayor Adam Schneider, City Manager Kevin Hayes, and Butow for information concerning the increased assessment and was ignored. (Second Amended Complaint ("SAC") ¶¶ 23, 24).

In the past, on five separate occasions in 2003, 2009, 2013, 2014 and 2015, Plaintiff filed an appeal with the Monmouth County Board of Taxation with regard to his property assessment. (DSF ¶¶ 57-61; PSF ¶¶ 57-61). His appeals were successful part of the time, and his assessment was lowered in 2003, 2009 and 2014. (DSF ¶¶ 57-61; PSF ¶¶ 57-61). He did not, however, file an appeal with regard to the 2016 assessment. Plaintiff does not dispute that the tax appeal process is the remedy for disputes involving tax assessments. (DSF ¶ 39; PSF ¶ 39). When questioned about why he did not appeal his 2016 property assessment, Plaintiff testified that he believed he would not have succeeded because the City implemented an "unfair tax . . . based on race and religion." (DSF ¶ 71, Ex. C 30:2-11; PSF ¶ 71). On two occasions, Plaintiff was told by a neighbor whose law firm previously represented the City that "people like [him] would always pay more taxes and that [he] would not be able to get . . . accurate services from the city . . . ." (DSF ¶ 72, Ex. C. 30:2-32:6; PSF ¶ 72). Plaintiff understood this to mean that he was taxed more because of his race and religion. (DSF ¶ 72, Ex. C. 31:20-32:6; PSF ¶ 72).

Plaintiff compares his property assessment against one other condominium located in a separate building within the Villas at Harbor Island complex. (DSF ¶¶ 47, 48; PSF ¶ 47, 48). S.H.,[1] a Caucasian Jewish woman, is the owner of the other unit. (DSF ¶ 44; PSF ¶ 44; SAC ¶ 26). No other comparative evidence was submitted. According to public records, S.H.s' condominium is the same square footage as Plaintiff's property.[2] Like Plaintiff's condominium, it does not have an ocean view. (DSF ¶ 44; PSF ¶ 44; SAC ¶ 18). Following receipt of her 2016 assessment, S.H. met with a representative of Realty Appraisal and received a ten percent reduction in her assessment due to "economic depreciation based on negative external influence on the property." (DSF ¶ 43; PSF ¶ 43). In the notes section of S.H.'s property card maintained by the City, Realty Appraisal noted that the assessment was lowered due to the unit's proximity to traffic and the main entrance to the complex. (DSF ¶ 44; PSF ¶ 44). Plaintiff testified that from reviewing the property cards for his and S.H.'s condominium, there was no indication of their ethnicity or religion. (DSF ¶ 66, Ex. C, 106:8-107:15; PSF ¶ 66). Plaintiff further testified that from looking at a list of condominium owners in the Villas at Harbor Island complex, he could not identify any of the owners' ethnicity

---

[1] In the interest of privacy, the Court identifies Plaintiff's neighbor by her initials.
[2] At his deposition, Plaintiff asserted that public records incorrectly state the square footage of S.H.'s condominium. (DSF ¶ 47, Ex. C, 32:25-33:14). Plaintiff claims S.H. acknowledged that her unit is bigger than Plaintiff's unit. (*Id.*). No evidence has been provided to confirm Plaintiff's assertion.

or religion. (DSF ¶ 67; PSF ¶ 67). When questioned whether Plaintiff's religion or ethnicity was discernable based on the public record card, Plaintiff responded "I don't know what they would know." (DSF ¶ 65, Ex. C 62:6-9). Plaintiff claims Defendants were "well aware" of his race from having met with him on "numerous occasions." (ECF No. 83, Plaintiff's Counterstatement of Facts ¶ 97). Outside of residents from the Villas at Harbor Island, Plaintiff did not know of any resident of Long Branch who was treated unfairly in the assessment of their property value by the tax assessor because of their race or religion. (DSF ¶ 78, Ex. C 126:12-16; PSF ¶ 78).

In his deposition, Butow testified that property assessments consider "the totality of the market data" with sales data being the "final arbiter of value." (DSF ¶ 18; Ex. B, 37:14-40:11; 39:14-40:11; 55:7-12). The participants in the marketplace are the arbiters of whether factors such as traffic would impact an assessment. (*Id.*). Things such as square footage, location, the number of listings in the neighborhood or building and amenities, such as a jacuzzi, fireplace, attic, deck or balcony are factors accounted for in the assessment. (DSF ¶¶ 18-21). Tax assessors "interpret" the market and do not calculate an "average." (DSF, ¶¶ 22, 24). Butow further testified that if a taxpayer declines to allow an assessor to inspect the property, the assumption is that the home has the best amenities. (DSF ¶ 36).

Plaintiff contends that since he was denied access to the municipal services available to Caucasian, non-Roman Catholics residents, he was discriminated against based on his race, ethnicity and religion. That is, he was denied the opportunity to confer with City officials and representatives about his assessment as S.H. and other non-Haitian American, non-Roman Catholics, had the opportunity to do. To prove his contention, Plaintiff submitted two affidavits from residents of the Villas at Harbor Island who affirmed that they met with the tax assessor's office, and accessed information concerning the calculation of their property assessments. (ECF No. 83, Exs. PLA-317, PLA-318). There is no mention of the affiants' race, ethnicity, or religion in the affidavits. There is also no mention of whether discriminatory factors affected their property assessments or access to information pertaining to same.

## II.

A motion for summary judgment under Fed. R. Civ. P. 56(c) should be granted only when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "A factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477

6

U.S. 242, 248 (1986)). "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48. "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see* Fed. R. Civ. P. 56(e) (requiring nonmoving party to set forth specific facts showing that there is a genuine issue for trial).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish the existence of a genuine issue of material fact. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The opposing party cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995); *see also Ullrich v. United States Secy. of Veterans Affairs*, 457 F. App'x 132, 136 (3d Cir. 2012) ("[T]he party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record."). If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor – that no reasonable jury could find

for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 Fed.Appx 222, 227 (3d Cir. 2007).

### III.

The discussion set forth in the Court's December 4, 2018 Memorandum and Order is incorporated herein. In that decision, the Court dismissed Plaintiff's § 1983 discrimination claims and held that that the Tax Injunction Act, 28 U.S.C. § 1341 ("TIA"), and the principal of comity barred Plaintiff from bringing a § 1983 challenge against the validity of a state's tax system in federal court. *See Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 116 (1981). In effect, the TIA divests district courts of subject matter jurisdiction over challenges to the administration of state tax laws. *See Cal. v. Grace Brethren Church*, 457 U.S. 393, 408 (1982); *see also Rosewell v. LaSalle National Bank,* 450 U.S. 503, 522 (1981). Accordingly, district courts are precluded from granting injunctive, declaratory and monetary relief in such actions. *See Fair Assessment in Real Estate Ass'n, Inc.*, 454 U.S. at 107; *Russo v. Twp. of Plumsted*, No. 13-5082, 2014 U.S. Dist. LEXIS 94318, at *20 (D.N.J. July 11, 2014) (quotation omitted) (extending the TIA's prohibition to monetary damages).

Taxpayers who bring claims alleging violations of constitutional rights "must seek protection of their federal rights by state remedies, provided of course that those remedies are plain, adequate, and complete[.]" *Fair Assessment in Real*

8

*Estate Ass'n*, 454 U.S. at 116. A state remedy need only meet "minimal *procedural* criteria" to be adequate. *Rosewell*, 450 U.S. at 512 (emphasis in original). "The critical criterion as to the adequacy of the remedy available to the taxpayers is not the relief which they can obtain in [State court] proceedings, but whether [the State] provides a forum for presentation of their claims." *Hardwick v. Cuomo*, 891 F.2d 1097, 1106 (3d Cir. 1989). A state remedy is sufficient "if it provides the taxpayer with a full hearing and judicial determination' at which [the taxpayer] may raise any and all constitutional objections." *Id.* at 1105 (quoting *Grace Brethren Church*, 457 U.S. at 412).

## IV.

A taxpayer's claim that a state tax, policy or procedure violates the FHA is within the ambit of the TIA. *See Cmty. Dev., Inc. v. Sarpy Cnty. Nebraska*, No. 8:16CV135, 2016 WL 3748710, at *2 (D. Neb. May 26, 2016) (granting the defendant's motion to remand because under the TIA the district court lacked subject matter jurisdiction to adjudicate the plaintiff's FHA claims); *United States v. Cnty. of Nassau*, 79 F. Supp. 2d 190, 195 (E.D.N.Y. 2000) ("If the federal policies against discrimination embodied in Section 1983 are not a sufficient basis to defeat the application of the Tax Injunction Act, [there is] no reason why similar non-discrimination policies in the Fair Housing Act should warrant a different result."); *Grace v. Hynes*, No. 95 C 4640, 1996 WL 495561, at *1 (N.D. Ill. Aug.

9

28, 1996). Plaintiff takes issue with the City's method in determining his assessment for property tax purposes and obtaining access to information pertaining to same. Boiled down, Plaintiff's discrimination claim is a challenge to the state's tax collection procedure. Thus, the same analysis previously undertaken by the Court with regard to Plaintiff's § 1983 claims applies with equal force to Plaintiff's § 3605 claim.

      Plaintiff alleges his property was assessed at a higher value compared to non-Haitian American, non-Roman Catholic residents because of his race, ethnicity and religion. Plaintiff also alleges that he was denied the opportunity to meet with City representatives, and the opportunity to access information pertaining to the increased assessment of his property based on his ethnicity, race and religion. Notwithstanding these allegations, Plaintiff admits that he did not comply with the procedures provided by the City as set forth in the October 13, 2015 letter. (DSF ¶¶ 33-34, Ex. C 62:25-63:6). Plaintiff did not meet with Realty Appraisal to discuss his assessment or allow an assessor from Realty Appraisal or the tax assessor's office to inspect his home. (DSF ¶ 35; PSF ¶35). Further, Plaintiff does not dispute that he did not file a tax appeal with regard to the 2016 assessment, despite having done so on five separate occasions and prevailing in three appeals. (DSF ¶¶ 57-61).

The law is clear that taxpayers who seek to challenge a state's property assessment procedure "must seek protection of their federal rights by state remedies, provided . . . that those remedies are plain, adequate, and complete[.]" *Fair Assessment in Real Estate Ass'n*, 454 U.S. at 116. New Jersey law provides several avenues for a taxpayer to challenge a local property tax assessment. Pursuant to N.J.S.A. § 54:4-63.11, a taxpayer may appeal his or her added assessment to the county board of taxation on or before December 1 of the year of the assessment. *Gen. Motors Corp. v. City of Linden*, 143 N.J. 336, 349, 671 A.2d 560, 566 (1996). "The County Board must hear the appeal and render judgment within one month after the last day for filing such appeals. *Ibid.* If the taxpayer is still dissatisfied, he or she may appeal the Board's decision to the Tax Court within forty-five days of the Board judgment." *Id.* Furthermore, pursuant to N.J.S.A. § 2B:13-4, a taxpayer may appeal a final judgment from the Tax Court as a matter of right to the Appellate Division of the Superior Court. *See Beach Creek Marina v. Royal Tax Lien Servs.*, LLC, No. CIV.A.09-2649 (KSH), 2010 WL 2674457, at *3 (D.N.J. June 30, 2010). The New Jersey Supreme Court has held that these remedies are adequate and satisfy the Supreme Court's "minimal *procedural* criteria." *Gen. Motors Corp.*, 143 N.J. at 349, 671 A.2d at 566; *Rosewell*, 450 U.S. at 512.

Because Plaintiff does not assert that New Jersey law fails to provide a plain, speedy and efficient remedy through its legal system, the TIA and principles of comity preclude the Court from entertaining a claim under 42 U.S.C. § 3605. Plaintiff's claims alleging violations of federal law in connection with his 2016 property assessment should have been brought to the Monmouth County Board of Taxation or New Jersey's Tax Court. Summary judgement is granted, and Plaintiff's § 3605 claim is dismissed.

The Court will briefly address Plaintiff's FHA claim. Section 3605 of the FHA prohibits discrimination in residential real estate-related transactions." 42 U.S.C. § 3605. A discrimination claim under the FHA may be established under a theory of intentional discrimination or disparate impact on a protected class. *Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mt. Holly*, 658 F.3d 375, 381 (3d Cir. 2011) (citing *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005). Intentional discrimination is established by showing that "discriminatory intent against a protected group was a motivating factor for the challenged action." *Eastampton Ctr., L.L.C. v. Twp. of Eastampton*, 155 F. Supp. 2d 102, 111 (D.N.J. 2001) (citation omitted). Whether a challenged action was because of race or religion is analyzed by determining "whether it disproportionately burdened a particular racial [or religious] group so as to cause a disparate impact." *Mt. Holly Gardens Citizens in Action*, 658 F.3d at 381 (citing

*Resident Advisory Bd. v. Rizzo*, 564 F.2d 126, 146-48 (3d Cir.1977). "Disparate impact claims . . . do not require proof of discriminatory intent." *Id.* (citing *Rizzo*, 564 F.2d at 147-48.

Drawing all inferences in Plaintiff's favor, the Court is satisfied that no genuine issue of material fact exists to preclude summary judgment. Plaintiff fails to set forth material facts to establish intentional discrimination by Defendants or a disparate impact resulting from the City's procedure for assessing properties. The record is devoid of facts sufficient to support Plaintiff's claim that he was discriminated because of his race or religion. The property cards recorded by Realty Appraisal and reviewed by the City make no reference to a resident's race, ethnicity, or religion. (DSF ¶¶ 63, 64, 66). When questioned whether someone would know Plaintiff's religion or ethnicity based on the public record card, Plaintiff responded "I don't know what they would know." (DSF ¶ 65). Moreover, the affidavits submitted by Plaintiff do not suggest any facts that would support the inference that access to the City's resources was based on a resident's race or religion.

In short, Plaintiff does not assert any facts that the tax assessment process employed by Defendants has a discriminatory effect on a protected class. The blanket assertion that the City assesses properties owned by people similarly situated to him, namely Haitian Americans and Roman Catholics, at a higher value

13

than non-Haitian Americans and non-Roman Catholics is unsupported by the record. Other than S.H., Plaintiff has not identified any other resident whose property assessment was affected – either positively or negatively – based on his or her race, ethnicity or religion. Moreover, Defendants provided a legitimate, non-discriminatory explanation for the assessments of Plaintiff's property and S.H.'s property. Accordingly, summary judgment is granted.

## ORDER

THIS MATTER having come before the Court on Defendants' motion for summary judgment (ECF No. 74) and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits presented therein; and for good cause shown:

**IT IS** on this 29th day of September, 2022,

**ORDERED** that Defendants' motion summary judgment is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.